**Woodring v. School Directors of Bald Eagle Area School District**

*Benjamin Novak,* for plaintiff.

*John R. Miller,* of *Miller, Kistler & Campbell,* for defendants.

CAMPBELL, P. J., August 17, 1972.—

ADJUDICATION

*I. Statement of Issues*

The issues are:

1. Did the School Directors of Bald Eagle Area School District act arbitrarily and capriciously without basis in fact and contrary to the evidence in taking disciplinary action against plaintiff?

2. Did the school have the authority to impose conditions of probation when it terminated plaintiff's suspension?

*II. Statement of Facts*

Minor plaintiff, together with two classmates, was accused of pulling down the panties of a female student. The incident occurred on January 20, 1972, in the vestibule of the Vo-Tech School while waiting for bus transportation. They were suspended by the high school principal and afforded a hearing by the school board in conformity with section 1318 of the Public School Code of March 10, 1949, P. L. 30, art. XIII, 24 PS §13-1318. As a result of the hearing on February 11, 1972, plaintiff's suspension was terminated and he was readmitted to school under the following conditions: (a) that he was on probation for an indefinite period of

time depending upon his conduct; (b) that any future infractions of the rules and regulations of the school would result in the immediate recommendation to the board for his permanent expulsion; (c) that he would not be allowed to attend or take part in any school activities outside of the regular classroom hours, including athletic events, dances, banquets, plays, etc., and (d) that he would avail himself of periodic counseling with the Centre County Juvenile Officer and with members of the school guidance staff.

On March 14, 1972, the instant equity action was filed, asking this court to enjoin, vacate and reverse the action of the school board and to enjoin the school board from suspending or attempting to permanently expel plaintiff for a violation of any conditions attached to his readmission. After disposing of defendant's preliminary objections in the nature of a demurrer and three motions to strike, the court conducted a hearing and the record is now before us.

## III. Discussion

Section 1318 of the Public School Code reads as follows:

"Every principal or teacher in charge of a public school may temporarily suspend any pupil on account of disobedience or misconduct, and any principal or teacher suspending any pupil shall promptly notify the district superintendent or secretary of the board of school directors. The board may, after a proper hearing, suspend such child for such time as it may determine, or may permanently expel him. Such hearings, suspension, or expulsion may be delegated to a duly authorized committee of the board."

It should be first noted that this is really not a due process case. A hearing was conducted under section 1318 of the code, circumscribed by the requirements

of procedural due process. See Dixon v. Alabama State Board of Education, 294 F.2d 150 (C.A. 5, 1961), cert. denied 368 U.S. 930; Stansbury v. Chester City School District, 50 D. & C. 2d 348 (1970). Plaintiff does contend, however, that the board acted arbitrarily and capriciously and that the testimony adduced at the hearing did not justify the action taken by the board. We have reviewed the testimony in detail and find that, although there is a scarcity of positive direct testimony implicating plaintiff as an active physical participant in the offensive conduct, we are, nevertheless, convinced from the testimony that plaintiff was involved. He was together with two other boys who admitted participation in the incident with the young struggling girl. The original investigation by the school principal indicated that plaintiff was involved. Although this conclusion was based on information received from others, we would consider it competent when no objection is made thereto. We, therefore, find that the school board did not act arbitrarily or capriciously and the action was justified from the evidence produced at the hearing.

The gist of plaintiff's contention on the second issue is that the school board had no authority to impose the conditions of probation and that the decision of the board was, in fact, a partial suspension subject to review by this court and, if it is not so interpreted, then the conditions attached are disciplinary in character reserved under the school code to the professional staff and not to the school board.

## Was There a Partial Suspension?

Following the board hearing, plaintiff's parents were notified by letter of their son's readmission. The letter contained the following sentence: "This action

terminates the suspension imposed on Scott [the minor plaintiff] on Thursday, January 27, 1972." Upon receipt of this notice, minor plaintiff returned to school and apparently has since attended without further incident. Notwithstanding the language of the letter, plaintiff contends that by reason of the conditions attached to his return, it amounts to a partial suspension. Section 1318 above quoted says nothing about partial suspension. The board has power here to suspend for such further period of time as it may determine or to permanently expel. It is quite clear that they decided to end or terminate the suspension on January 27, 1972.

Does the School Board Have the Authority to Impose Conditions When the Suspension is Terminated?

Plaintiff argues that the discipline of school children rests exclusively with the teacher and administrative officials under section 1317 of the code, 24 PS §13-1317, which reads as follows:

"Every teacher, vice principal and principal in the public schools shall have the right to exercise the same authority as to conduct and behavior over the pupils attending his school, during the time they are in attendance, including the time required in going to and from their homes, as the parents, guardians or persons in parental relation to such pupils may exercise over them."

With this position, we cannot agree. Section 510 of the code, 24 PS §5-510, provides, in part, as follows:

"The board of school directors in any school district may adopt and enforce such reasonable rules and regulations as it may deem necessary and proper, regarding the . . . conduct and deportment of all pupils attending the public schools in the district, during such time as they are under the supervision of the board of

school directors and teachers, including the time necessarily spent in coming to and returning from school."

We believe the board has the basic fundamental authority and responsibility over the conduct of the pupils and the personnel immediately in charge of said pupils. Conduct of the pupils then is the dual responsibility of both the board and the teaching and administrative personnel.

It is strenuously argued that plaintiff here is being denied participation in certain extracurricular activities. In a broad sense, education is more than homework and textbooks; and school activities outside of the regular classroom hours such as athletic events, dances, plays and banquets do have value in the learning process. Notwithstanding this view, we believe the board has the right to temporarily deny his participation therein under the circumstances in this case. Under section 511 of the code, 24 PS §5-511, the school board has the authority over the control and even the prohibition of extracurricular activities. The school board has the inherent power to operate the school system and likewise has the authority to place this condition upon plaintiff.

The school board is charged with the duty of determining what is best for the student and what is best for the orderly administration of the school. It must balance the interests of the individual student against the interests of the entire student body. Common sense dictates that the school board must be given a certain amount of discretion in making its decision which, we believe, includes the right to attach what they consider to be appropriate conditions even though they appear to be disciplinary in character. Since we find no abuse of discretion, the court has no right to substitute its

judgment in place of the exercised discretion of the board. Absent constitutional questions, school board actions in disciplinary cases should not be disturbed if they bear a reasonable relationship to upholding the physicial and moral safety of other students and teachers. See "The Scope and Sources of School Board Authority to Regulate Student Conduct and Status: a Nonconstitutional Analysis," 117 U. of Pa. L. Rev. 373 (Jan. 1969).

A serious incident had taken place in which a female student was partially molested. It goes without saying that paramount in the minds of the school board was the safety of its students. Behavior of this type cannot be tolerated. They had the authority to permanently expel him. Nevertheless, they were cognizant of the consequences of such expulsion upon plaintiff's education. With this in mind, they balanced the safety of the school against plaintiff's need for an education and ordered reinstatement with the conditions attached. We would commend the school board for so doing.

## DECREE NISI

And now, August 17, 1972, we enter the following decree nisi:

1. Plaintiff's complaint in equity is dismissed; costs to be paid by plaintiff.

2. The prothonotary is directed to notify all parties of the filing of this decree nisi and if no exceptions are filed pursuant to Pennsylvania Rule of Civil Procedure 1518, this decree nisi shall be entered by the prothonotary on praecipe as the final decree, in accordance with Pa. R. C. P. 1519.